# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA

| | | |
|---|---|---|
| KARRY MARIE YEARWOOD, | § | |
| | § | |
| *Plaintiff,* | § | No. 1:19-cv-311 |
| | § | |
| ~v~ | § | **JURY DEMAND** |
| | § | |
| CITY OF GRAYSVILLE, | § | |
| CHIEF JULIE LYNN TANKSLEY, | § | |
| OFFICER KEITH WAYNE POST, and | § | |
| OFFICER LANDON TREW, | § | |
| In their individual and | § | |
| official capacities as agents | § | |
| and employees of the City | § | |
| of Graysville, | § | |
| | § | |
| *Defendants.* | § | |

## AMENDED COMPLAINT

PLAINTIFF, through counsel, for her causes of action will show the Court:

## Introduction:

1.      This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights secured to the Plaintiff by the Fourth Amendment and Fourteenth Amendment of the United States Constitution, and for violations of the laws of the State of Tennessee by the Defendants.

2.      Plaintiff avers that the individually named Defendants Officer Keith Wayne Post ("Post"), and Officer Landon Trew ("Trew"), worked in unison to conduct an unreasonable seizure of Plaintiff's person without probable cause and to maliciously prosecute Plaintiff in one event to be further described herein.

~ 1 ~

3.     Plaintiff avers that the individually named Defendant Chief Julie Lynn Tanksley ("Tanksley") conducted an unreasonable seizure of Plaintiff's person without probable cause and to maliciously prosecute Plaintiff in another event to be further described herein.

4.     Plaintiff also maintains that the individually named defendants committed these violations and torts as a result of policies, customs, and/or procedures of the City of Graysville ("City").

5.     In addition, Plaintiff avers that the individual defendants subjected Plaintiff to mental anguish and emotional distress.

**Jurisdiction and Venue:**

6.     This is an action to redress the deprivation of rights secured to Plaintiff by the Fourth, and Fourteenth Amendments to the United States Constitution and for violations of Tennessee common law. Thus, this Court is vested with original jurisdiction under 28 U.S.C. §§ 1331 and 1343. As to the Plaintiff's state claims, this Court has jurisdiction over the state claims pursuant to 28 U.S.C. § 1357 as they arise from the same case and same controversies.

7.     Venue is proper in this Court, Chattanooga Division, pursuant to 28 U.S.C. §1391(B). All acts complained of occurred within Rhea County, a political sub-division of the State of Tennessee, and physically located within the fourteen-county district of this Court.

a.   Plaintiff is a resident of Rhea County, Tennessee.

b.   To the best of Plaintiff's knowledge, the individual defendants are residents of Rhea County, Tennessee.

c.   The City is a political sub-division of the State of Tennessee.

~ 2 ~

**The Parties:**

8.     At all times relevant to this cause of action, Plaintiff was a citizen of the United States, and a resident of the State of Tennessee.

9.     At all times relevant to this cause of action, the City was a political sub-division of the State of Tennessee organized and existing under the laws of the State of Tennessee.

    a.     The City finances its police department and provides rules and regulations for the operation of the police department.

    b.     The City provides oversight of the hiring, training, supervision, discipline, and retention of all personnel in its police department.

    c.     The City is governed by a body known as the Graysville Board of Mayor and Commissioners. ("Board").

10.     Specifically, and at all times relevant to this cause of action, the City is responsible for the creation and maintenance of its police department (hereinafter and alternatively identified as "GPD" or the "department"), which is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee as to:

    a.     The training and certification of its law enforcement employees.

    b.     The safe treatment of persons seized and held within the custody of its individual officers and agents.

    c.     Creation of rules and regulations to properly identify officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction.

~ 3 ~

d. Creation of rules and regulations to properly investigate officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction.

e. And to not hire, retain, re-hire, or promote police officers who have a recurring pattern of misconduct or conduct that would place its supervisory personnel on notice and the City on notice of officers who are a threat to citizens within its jurisdiction.

11. At all times relevant to this cause of action, the individual defendants were employed by the City and acted under the color of law. In addition, the individual defendants acted in their official capacities as agents, servants, and employees of the City as defined under TENN. CODE ANN. § 29-20-102.

12. Plaintiff sues the individual defendants in their individual and official capacities.

13. Plaintiff sues the City in its governmental capacity.

**Factual Basis -Individual Defendants Trew and Post:**

14. On December 26, 2018, Defendants Trew and Post conducted a traffic stop of a vehicle operated by Plaintiff's mother, Debbie Caraway ("Caraway"), and occupied by Plaintiff's minor nephew identified as D.N., and Plaintiff's minor son identified as C.Y.

15. Trew and Post conducted the traffic stop near Plaintiff's home.

16. Trew and Post arrested D.N. on what Trew and Post claimed was an arrest warrant.

17. Plaintiff went out to get C.Y. (who was 4 years old) after Caraway called Plaintiff to come and get C.Y.

~ 4 ~

18.     Plaintiff and Caraway requested of Post and Trew to show them the warrant.

19.     Trew told Plaintiff that he had the warrant, and held up a piece of paper but refused to show Plaintiff and Caraway the contents of the paper.

20.     Plaintiff asked Trew, "were you not pounding on our door two weeks ago about this?"

21.     Without any lawful justification or any probable cause, Trew arrested Plaintiff for disorderly conduct and resisting arrest.

22.     Trew placed Plaintiff into Post's police car, and Post transported Plaintiff to the Rhea County Jail. At no time did Post intervene to prevent Trew from seizing Plaintiff.

23.     On February 5, 2019, Plaintiff appeared before the Hon. Shannon Garrison on the charges.

24.     Plaintiff learned after the February 5, 2019 court date that Trew's charges had been subsequently dismissed.

25.     Plaintiff also learned from Jana Bice (D.N. juvenile probation officer), that the paper Post held up was an attachment that was not signed nor approved by any judicial officer or judge.

26.     Sometime between February 5, 2019 and June 3, 2019, Trew presented to the Rhea County Grand Jury, what Plaintiff believes was perjured testimony to the Grand Jury in order to obtain a true bill against Plaintiff for charges of disorderly conduct and resisting arrest.

27.     On June 3, 2019, the Rhea County Grand Jury returned a true bill charging Plaintiff with one count of disorderly conduct, a class C misdemeanor.

28.     On November 25, 2019, between 10 and 10:30 pm, Plaintiff noticed two Graysville police officers going through the mail boxes in Plaintiff's apartment complexes.

~ 5 ~

29.     Plaintiff then saw Trew at Plaintiff's parked car, shining his flashlight into the car.

30.     On or about December 4, 2019, one month after Plaintiff filed the instant action, deputies of the Rhea County Sheriff's Office arrested Plaintiff at her home on the outstanding true bill charge of disorderly conduct. This was the first time Plaintiff was aware of the outstanding true bill.

31.     The true bill shows Trew as the "prosecutor" of the charge.

**Factual Basis -Individual Defendant Tanksley:**

32.     On March 31, 2019, Plaintiff had an altercation with two individuals (Jennifer Cisco, ("Cisco"), and Clark Morris ("Morris")) at the front yard of Plaintiff's home. Caraway was present and observed the altercation.

33.     Plaintiff went inside her home and called for police to remove Cisco and Morris.

34.     Tanksley arrived and told Cisco and Morris to leave, whereupon they left Plaintiff's property.

35.     Plaintiff had remained inside her home then entire time before Tanksley arrived and while Tanksley engaged Cisco and Morris.

36.     Once Cisco and Morris departed, Tanksley walked unannounced into Plaintiff's home and confronted Plaintiff as Plaintiff was seated on her couch.

37.     Tanksley loomed over Plaintiff as Plaintiff remained seated on the couch, and Tanksley falsely claimed she saw Plaintiff assault Caraway.

38.     At this point, Kristy Ball ("Ball"), a friend of Plaintiff, arrived and attempted to enter Plaintiff's home upon Plaintiff's request.

39.     Tanksley demanded that Ball state her reason for being at Plaintiff's home, and Ball replied that she came over to visit her friend: Plaintiff.

~ 6 ~

40.    Tanksley told Ball to leave, and then turned to Plaintiff and told Plaintiff to not speak to Ball.

41.    Plaintiff asked to speak with Caraway, and Tanksley refused Plaintiff's request.

42.    Plaintiff asked Tanksley why she came into the house, and Tanksley told Plaintiff that Caraway told her (Tanksley) that Plaintiff assaulted Caraway. Caraway was standing directly outside the front door, and overheard what Tanksley said to Plaintiff. Caraway told Tanksley that she never told Tanksley anything of the sort.

43.    At no time was Plaintiff outside while Tanksley was present.

44.    At no time did Plaintiff assault Caraway, and Caraway never stated to Tanksley that Plaintiff assaulted Caraway.

45.    Without probable cause nor any other lawful justification, Tanksley told Plaintiff to get dressed and said, "you're going for a ride to jail."

46.    Plaintiff was in her pajamas. Plaintiff was enduring a menstrual cycle and wanted to get cleaned up before traveling to jail.

47.    Tanksley then allowed Plaintiff to get into a shower, but Tanksley told Plaintiff she would watch Plaintiff as Plaintiff showered and get dressed.

48.    Tanksley then watched Plaintiff get undressed, watched Plaintiff shower, and watched Plaintiff place a feminine hygiene product into her underwear as Plaintiff got into clothes.

49.    The entire time, Plaintiff felt humiliated and had no choice but to allow Tanksley to observe every intimate moment.

50.    Tanksley took Plaintiff to the Rhea County Jail and charged her with domestic assault.

~ 7 ~

51.     On April 12, 2019, the Hon. Shannon Garrison dismissed the charge Tanksley brought against the Plaintiff.

**Factual Basis-City Liability:**

52.     Based upon Plaintiff's belief, Post began performing police officer duties for the City on January 5, 2017 without Tennessee P.O.S.T. certification until sometime in September 2018 after Tanksley took action to get Post Tennessee P.O.S.T. certified by letter to the Tennessee P.O.S.T. Commission dated June 27, 2018.

53.     In a letter dated May 22, 2017 from District Attorney J. Michael Taylor to then City Mayor Ted Doss, Mr. Taylor stated that his office "will not prosecute any pending or future cases involving criminal charges wherein Chief Tanksley is either the prosecuting or evidentiary witness."

54.     Mr. Taylor cited the fact that the McMinn County (TN) Grand Jury indicted Tanksley for two counts of Criminal Extortion growing from her official position with the Calhoun (TN) Police Department.

55.     Despite Mr. Taylor's notice, the City continued and continues to employ Tanksley as a Chief of Police.

56.     The City allowed Post to perform arrest duties despite his lack of Tennessee P.O.S.T. certification**.**

57.     Prior to the City's employment of Tanksley, the City (in 2008) employed Jason Erik Redden ("Redden") as the police chief.

58.     Prior to the City's employment of Redden as the police chief, Redden worked for the City of Chattanooga ("Chattanooga") as a police officer.

~ 8 ~

59.     During his employment with Chattanooga, the Internal Affairs Division ("IAD")

of the Chattanooga Police Department investigated Redden upon five separate complaints of

misconduct, two of which IAD declared unfounded, and the remaining three determined as

follows:

> On 8-9-2004, Redden was alleged to have violated Chattanooga Police
> Department policies and was untruthful in an internal affairs investigation. On 9-
> 15-2004, those charges were sustained and he was suspended for 14 days.
>
> On 9-2-2004, Redden was accused of insubordination and to have violated
> another policy.  On 1-18-2005, those allegations were sustained and he was
> placed on probation.
>
> The last one was dated 5-7-2005, and it was alleged that Redden had behaved in
> such a manner as to constitute "conduct unbecoming" and violated the ride along
> policy. These disciplinary actions were sustained on 6-1-2005. This is the same
> day he resigned and stated "dissatisfaction with job/working conditions."

60.     Despite what Plaintiff avers was easy to obtain information from Chattanooga as

to Redden's background, the City hired Redden as the City's police chief.

61.     From 2005 until 2014, Linda Michelle Horton ("Horton") was the City Recorder

for the City. Part of her duties was to make recommendations to the City authorities regarding

personnel issues.

62.     In August of 2013, City Mayor Ted Doss ("Mayor Doss") reported to Horton that

a Rhea County citizen had lodged a complaint with the Rhea County Sheriff's Office regarding a

situation in which her vehicle and money had been seized.

63.     The citizen claimed and proved that the money seized from her was not appropriate

for forfeiture because it was documented to be inheritance money, as opposed to money used for

unlawful purposes.

~ 9 ~

64.     Mayor Doss asked Horton to look into the situation. Horton conducted an inquiry and concluded that Redden had committed acts of official misconduct. Horton's suspicions were bolstered by an audio recording made by another City officer (Shawn Shelton ("Shelton")) where Shelton spoke with Redden about taking action to cover-up his misconduct.

65.     As a result of her investigation, Horton suspended Redden.

66.     Horton then contacted the Rhea County District Attorney and the Tennessee Bureau of Investigation, and advised them of her findings as to Redden's suspicious and unlawful actions.

67.     After Horton suspended Chief Redden, the Board held an executive meeting, during which they decided to remove Horton's personnel authority over the police and fire departments and instead transferred that authority to the Board.

68.     The Board then removed Redden's suspension and returned him as the Chief of Police.

69.     Afterwards, the City retaliated against Horton. This retaliation, including removal of Horton's personnel authority over the police and fire departments, included:

a.     Directing Horton to contact District Attorney Mike Taylor and tell him that she (Horton) was not allowed to talk to his office unless the entire Board was present for the conversation. As a result, she wrote a letter indicating as such, which District Attorney Taylor rejected,

b.     Terminating Horton's employment. In her Separation Notice signed by the Mayor Ted Doss of Graysville, the Mayor indicated that Plaintiff was fired because, "Majority of Board did not appreciate her turning the Chief of Police in for his criminal activity."

~ 10 ~

70.     Shortly after Horton's termination, the TBI concluded its investigation of Redden and the Rhea County Grand Jury indicted Redden with ten counts of official misconduct involving the theft of money (including several counts greater than $1,000 and vehicles) whereupon he was taken into custody.

71.     Members of the Board personally provided the means for Redden to obtain bond to be released from custody.

72.     Given the criminal charges, the Board voted to lay off Redden, to enable him to draw unemployment. However, several weeks later the Board voted 3-2 to re-hire Redden.

73.     Redden eventually pleaded guilty to two counts of official misconduct, and was no longer employed by the City.

74.     The City's hiring of Redden and Tanksley as police chief despite their histories of misconduct, and the City's refusal to immediately terminate Redden and Tanksley despite their indictments, constitutes a deliberate indifference to the public at large and created the atmosphere that allowed the individual defendants in the case at bar to believe their conduct would go unpunished and was the direct and proximate cause of Plaintiff's damages.

75.     The City's employment of Post as a police officer without proper P.O.S.T. Commission certification reflects that the City did not care about the oversight of its police officer employees.

76.     The City's retaliation of Horton establishes the City cares more about its officers than the public at large, even when its officers persist in conduct that reflects inability to perform duties, and malfeasance of performance and was the direct and proximate cause of Plaintiff's damages.

~ 11 ~

77.     Despite notification from District Attorney Taylor that his office would not prosecute any criminal charges in which Tanksley participated in any way, the City continues to employ her as the police chief, and thus establishes the City cares more about its officers than the public at large, even when its officers persist in conduct that reflects inability to perform duties, and malfeasance of performance was the direct and proximate cause of Plaintiff's damages.

**Count One:**
**Violation of Civil Rights Under**
**Color of Law 42 U.S.C. §1983 –**
**Unreasonable Seizure without Probable Cause**
**December 26, 2018 Incident**

78.     Plaintiff reasserts and incorporates fully all averments stated in this Complaint as if fully set out herein.

79.     Post, and Trew had no probable cause to seize the Plaintiff.

80.     No reasonable law enforcement officer would have acted in this manner.

81.     In addition, the combined actions of Post, and Trew constituted a joint effort in which they participated as equals.

82.     The City's continued employment of the individuals identified in the portions of this Complaint titled in-part, "City's Liability," and the City's failure to discipline the same individuals in any meaningful manner, created an atmosphere that other City employees, including Trew and Post, could act in the same manner, and thus not be punished in any significant way.

83.     The failures of the City as set forth in previous paragraphs constituted deliberate indifference on the part of the City, created an environment that allowed the misconduct of Post and Trew against Plaintiff, constituted a policy of the City, and was the direct and proximate cause of Plaintiff's damages, and needless physical and mental suffering.

~ 12 ~

84.     Post and Trew acted under color of law and their negligence and intentional acts along with the deliberate indifference of the City deprived Plaintiff of rights secured to her under the Fourth and Fourteenth Amendments to United States Constitution to be free from unreasonable seizures of her person without probable cause and without Due Process of Law.

85.     Plaintiff sues Post and Trew in their official and individual capacities under this Count. Plaintiff also sues the City under this count.

86.     Post and Trew committed their unlawful acts against Plaintiff with actual malice toward Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights of Plaintiff. Thus, Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

87.     The omissions of the City constituted deliberate indifference toward Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of Plaintiff. This failure constitutes deliberate indifference and was the direct and proximate cause of Plaintiff's injuries. Thus, Plaintiff is entitled to damages, and attorney fees pursuant to 42. U.S.C. §1988.

**Count Two:**
**Violation of Civil Rights Under**
**Color of Law 42 U.S.C. §1983 –**
**Malicious Prosecution**
**December 26, 2018 Incident**

88.     Plaintiff reasserts and incorporates fully all averments stated in this Complaint as if fully set out herein.

89.     Post and Trew had a non-delegable duty to refrain from making false criminal charges against Plaintiff.

~ 13 ~

90.     The Rhea County District Attorney General's ("DA") rapid dismissal of all charges Post and Trew brought against Plaintiff supports Plaintiff's claim of malicious prosecution.

91.     No reasonable law enforcement officer would have acted in this manner.

92.     In addition, the combined actions of Post, and Trew constituted a joint effort in which they participated as equals.

93.     By obtaining a true bill in a ex parte manner to the Rhea County Grand Jury, Trew initiated a second prosecution of the Plaintiff, which has no bearing on the original prosecution.

94.     The City's continued employment of the individuals identified in the portions of this Complaint titled in-part, "City's Liability," and the City's failure to discipline the same individuals in any meaningful manner, created an atmosphere that other City employees, including Trew and Post, could act in the same manner, and thus not be punished in any significant way.

95.     The failures of the City as set forth in previous paragraphs constituted deliberate indifference on the part of the City, created an environment that allowed the misconduct of the individual defendants against Plaintiff, constituted a policy of the City, and was the direct and proximate cause of Plaintiff's damages, and needless physical and mental suffering.

96.     The individual defendants acted under color of law and their negligence and intentional acts along with the deliberate indifference of the City deprived Plaintiff of rights secured to her under the Fourteenth Amendment to United States Constitution to be free from malicious prosecution and thus deprived Plaintiff of her right to the Due Process of Law.

~ 14 ~

97.     Plaintiff sues Post and Trew in their official and individual capacities under this Count and sues the City under this count.

98.     Post and Trew committed their acts against Plaintiff with actual malice toward Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights of Plaintiff. Thus, Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

99.     The omissions of the City constituted deliberate indifference toward Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of Plaintiff. This failure constitutes deliberate indifference and was the direct and proximate cause of Plaintiff's injuries. Thus, Plaintiff is entitled to damages, and attorney fees pursuant to 42. U.S.C. §1988.

**Count Three:**
**Violation of Civil Rights Under**
**Color of Law 42 U.S.C. §1983 –**
**Unreasonable Seizure without Probable Cause**
**March 31, 2019 Incident**

100.    Plaintiff reasserts and incorporates fully all averments stated in this Complaint as if fully set out herein.

101.    Tanksley had no probable cause to seize the Plaintiff. At best, Tanksley seized Plaintiff on a misdemeanor that did not happen in Tanksley's presence, which, under Tennessee law, required Tanksley to obtain an arrest warrant.

102.    No reasonable law enforcement officer would have acted in this manner.

103.    Tanksley's subsequent conduct by requiring Plaintiff to allow Tanksley to observe Plaintiff shower and use a feminine hygiene product served no lawful purpose.

~ 15 ~

104.    The City's continued employment of the individuals identified in the portions of this Complaint titled in-part, "City's Liability," and the City's failure to discipline the same individuals in any meaningful manner, created an atmosphere that other City employees, including Tanksley, could act in the same manner, and thus not be punished in any significant way.

105.    The failures of the City as set forth in previous paragraphs constituted deliberate indifference on the part of the City, created an environment that allowed the misconduct of Tanksley against Plaintiff, constituted a policy of the City, and was the direct and proximate cause of Plaintiff's damages, and needless physical and mental suffering.

106.    Tanksley acted under color of law and her negligence and intentional acts along with the deliberate indifference of the City deprived Plaintiff of rights secured to her under the Fourth and Fourteenth Amendments to United States Constitution to be free from unreasonable seizures of her person without probable cause and without Due Process of Law.

107.    Plaintiff sues Tanksley in her official and individual capacities under this Count. Plaintiff also sues the City under this count.

108.    Tanksley committed her unlawful acts against Plaintiff with actual malice toward Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights of Plaintiff. Thus, Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

109.    The omissions of the City constituted deliberate indifference toward Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of Plaintiff. This failure constitutes deliberate indifference and was the

direct and proximate cause of Plaintiff's injuries. Thus, Plaintiff is entitled to damages, and attorney fees pursuant to 42. U.S.C. §1988.

**Count Four:**
**Violation of Civil Rights Under**
**Color of Law 42 U.S.C. §1983 –**
**Malicious Prosecution**
**March 31, 2019 Incident**

110.    Plaintiff reasserts and incorporates fully all averments stated in this Complaint as if fully set out herein.

111.    Tanksley had a non-delegable duty to refrain from making false criminal charges against Plaintiff.

112.    The Rhea County District Attorney General's ("DA") rapid dismissal of the charge Tanksley brought against Plaintiff supports Plaintiff's claim of malicious prosecution.

113.    No reasonable law enforcement officer would have acted in this manner.

114.    The City's continued employment of the individuals identified in the portions of this Complaint titled in-part, "City's Liability," and the City's failure to discipline the same individuals in any meaningful manner, created an atmosphere that other City employees, including Tanksley, could act in the same manner, and thus not be punished in any significant way.

115.    The failures of the City as set forth in previous paragraphs constituted deliberate indifference on the part of the City, created an environment that allowed the misconduct of Tanksley against Plaintiff, constituted a policy of the City, and was the direct and proximate cause of Plaintiff's damages, and needless physical and mental suffering.

116.    Tanksley acted under color of law and her negligence and intentional acts along with the deliberate indifference of the City deprived Plaintiff of rights secured to her under the

~ 17 ~

Fourteenth Amendment to United States Constitution to be free from malicious prosecution and thus deprived Plaintiff of her right to the Due Process of Law.

117. Plaintiff sues Tanksley in her official and individual capacities under this Count and sues the City under this count.

118. Tanksley committed her acts against Plaintiff with actual malice toward Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights of Plaintiff. Thus, Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

119. The omissions of the City constituted deliberate indifference toward Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of Plaintiff. This failure constitutes deliberate indifference and was the direct and proximate cause of Plaintiff's injuries. Thus, Plaintiff is entitled to damages, and attorney fees pursuant to 42. U.S.C. §1988.

**Count Five:**
**Malicious Prosecution**
**December 26, 2018 Incident**

120. Plaintiff reasserts and incorporates fully all averments stated in this Complaint as if fully set out herein.

121. The false charges Trew and Post brought against Plaintiff was without probable cause and done with actual malice. The DA dismissed all the charges. Despite Trew's unilateral actions with the Rhea County Grand Jury, and the subsequent true bill, Trew's actions constituted a second prosecution and has no bearing upon the first arrest and dismissal.

122. Trew and Post committed their acts with actual malice that allows Plaintiff an award of substantial punitive damages.

~ 18 ~

123.     Plaintiff sues Trew and Post in their individual capacities.

**Count Six:**
**False Arrest**
**December 26, 2018 Incident**

124.     Plaintiff reasserts and incorporates fully all averments stated in this Complaint as if fully set out herein.

125.     Trew and Post did not have any lawful basis to seize and arrest Plaintiff. The DA dismissed all the charges. Despite Trew's unilateral actions with the Rhea County Grand Jury, and the subsequent true bill, Trew's actions constituted a second prosecution and has no bearing upon the first arrest.

126.     Post and Trew arrested Plaintiff with assistance from one another, and their individual efforts combined was tantamount to a joint venture wherein Trew and Post participated as equals to one another.

127.     Trew and Posts' joint actions against Plaintiff were the direct and proximate cause of Plaintiff's damages and mental anguish. Trew and Post committed their acts with actual malice that allows Plaintiff an award of substantial punitive damages.

128.     Plaintiff sues Trew and Post in their individual capacities.

**Count Seven:**
**Malicious Prosecution**
**March 31, 2019 Incident**

129.     Plaintiff reasserts and incorporates fully all averments stated in this Complaint as if fully set out herein.

130.     The false charge Tanksley brought against Plaintiff was without probable cause and done with actual malice. The DA dismissed all the charges.

~ 19 ~

131.    Tanksley committed her acts with actual malice that allows Plaintiff an award of substantial punitive damages.

132.    Plaintiff sues Tanksley in her individual capacity.

**Count Eight:**
**False Arrest**
**March 31, 2019 Incident**

133.    Plaintiff reasserts and incorporates fully all averments stated in this Complaint as if fully set out herein.

134.    Tanksley did not have any lawful basis to seize and arrest Plaintiff.

135.    Tanksley's actions against Plaintiff were the direct and proximate cause of Plaintiff's damages and mental anguish. Tanksley committed her acts with actual malice that allows Plaintiff an award of substantial punitive damages.

136.    Plaintiff sues Tanksley in her individual capacity.

**Count Nine:**
**Tort of Outrage**
**March 31, 2019 Incident**

137.    Plaintiff reasserts and incorporates fully all averments stated in this Complaint as if fully set out herein.

138.    Tanksley did not have any lawful basis to seize and arrest Plaintiff, and then observe Plaintiff shower and use a feminine hygiene product.

139.    Tanksley's against Plaintiff were the direct and proximate cause of Plaintiff's damages and mental anguish. Tanksley committed her acts with actual malice that allows Plaintiff an award of substantial punitive damages.

140.    Plaintiff sues Tanksley in her individual capacity.

~ 20 ~

**W**HEREFORE, Plaintiff demands judgment against the Defendants jointly and severally and requests the following relief:

a.      The Court to award compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000) against all Defendants, and punitive damages in the amount of TWO MILLION DOLLARS ($2,000.000) against the individual Defendants;

b.      That the Court award attorney's fees;

c.      That the Court award costs, and discretionary costs;

d.      Any other relief the Court may deem fit and proper;

e.      Any other relief the Court may deem fit and proper pursuant to 42 U.S.C. §1988, and

f.      Allow a jury trial on all issues.

Respectfully submitted,

By: /s/ Robin Ruben Flores
**ROBIN RUBEN FLORES**
TENN. BPR #20751
GA. STATE BAR #200745
Attorney for Plaintiff
4110-A Brainerd Road
Chattanooga, TN 37411
423 / 267-1575 fax 267-2703
robin@robinfloreslaw.com

CERTIFICATE OF SERVICE

I certify that I have delivered a copy of this motion to all persons noted on the electronic filing receipt and so delivered on the date and time shown on the same receipt.

By: s/ Robin Ruben Flores